IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **BRIAN MCENERY** | § |
| | § |
| V. | § CIVIL ACTION NO._5:25-cv-00085_ |
| | § |
| **THE CITY OF SAN ANTONIO** | § |
| **BY AND THROUGH ITS AGENT** | § |
| **THE SAN ANTONIO FIRE** | § |
| **DEPARTMENT** | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PLAINTIFF **BRIAN MCENERY** ("Plaintiff" or "McEnery"), complaining of DEFENDANT **THE CITY OF SAN ANTONIO BY AND THROUGH ITS AGENT THE SAN ANTONIO FIRE DEPARTMENT** ("Defendant" or "SAFD"). Plaintiff files this Original Complaint, asserting claims for discrimination under Title VII and the Texas Commission on Human Rights Act, as well as retaliation in violation of Title VII and the Texas Commission on Human Rights Act.

## I.
## PARTIES

1. Plaintiff Brian McEnery is an individual and a citizen and resident of Texas and is an employee of Defendant SAFD.

2. Defendant The City of San Antonio by and through its agent the San Antonio Fire Department, is a governmental entity conducting operations in the State of Texas in the Western District of Texas, San Antonio Division. Defendant may be served by serving the City Attorney Andrew Segovia at Office of the City Attorney, 203 S. St. Mary's Street, 2nd Floor, San Antonio, Texas 78205. A waiver of service has been requested.

## II.
## JURISDICTION AND VENUE

3. The Court has jurisdiction to hear the merits of McEnery's claims under 28 U.S.C. §1331 as they arise under federal statutes, specifically the Americans with Disabilities Act and the Rehabilitation Act.

4. All the acts alleged herein occurred in Atascosa County, Texas within the Western District of Texas San Antonio Division.

5. Venue in this district and division is proper under 28 U.S.C. § 1391(b)(2).

6. At the time of filing, damages are within the jurisdictional limits of the Court.

## III.
## MISNOMER / MISIDENTIFICATION

7. If any parties are misnamed or are not included herein, it is Plaintiff's contention that such was a "misidentification," "misnomer," and/or such parties

are/were "alter "egos of parties named herein. Alternatively, Plaintiff contends that such "corporate veils" should be pierced to hold such parties properly included in the interest of justice.

## IV.
## FACTS

8. Plaintiff Brian McEnery filed an EEOC Charge of Discrimination against Defendant City of San Antonio (SAFD) in 2011 and 2015. The basis of the charges was the improper administration of medical tests and screenings as part of the SAFD Wellness program. McEnery's charges set out how those tests and screenings violated the Americans with Disabilities Act and the Genetic Information Nondiscrimination act.

9. Following his complaints, McEnery began to be treated less favorably than other employees.

10. For example, in September 2018, McEnery responded to a plane crash near Rolling Oaks Mall in San Antonio. McEnery is a pilot and aircraft inspector and was first the first battalion chief on the scene. McEnery had a notebook with various department policies and was familiar with a plane crash policy that had been agreed to by the City of San Antonio and the United States Air Force. McEnery reviewed the policy and followed it at the scene of the accident.

11. The next day, however, the shift commander was angry at McEnery and claimed that McEnery had botched the investigation and not followed policy. The

shift commander claimed that he would have to send McEnery to get remedial training. When McEnery was given a chance to respond, he presented the shift commander with the City/Air Force Policy. The shift commander then immediately ended the meeting and did not address the matter again.

12. In June 2022, McEnery responded to a fire near Lackland Air Force Base where 53 migrants died in a tractor trailer. Despite the fact that McEnery led the response to the tragedy, he was not recognized by Fire Chief Hood or other members of leadership for his efforts. Due to the seriousness of the incident, many firefighters were offered critical incident stress debriefing and other care. However, McEnery was not offered this despite the fact that he was involved in responding to the incident and also had to deal with the deceased.

13. As a result of the charges of discrimination, a Conciliation Agreement was signed by SAFD with the EEOC on or about September 29, 2022. This agreement involved both the 2011 and 2015 charges of discrimination. As part of the agreement, SAFD was required to implement a new policy within 60 days.

14. On or about December 14, 2022, McEnery was ordered to take a physical and have tests taken as a condition of his employment with SAFD. The exam was the same physical that McEnery had previously complained about that had been found to be in violation.

15. On or about January 19, 2023, McEnery emailed Renee Tudyk in SAFD's Human Resources department. McEnery asked why he had to undergo a mandatory physical after the conciliation agreement.

16. Tudyk responded by email on February 1, 2023, and told McEnery that the physicals were voluntary as of the date of the Conciliation. Tudyk also told McEnery that he had been notified that the physicals were voluntary, which was not true.

17. McEnery responded by email on February 3, 2023, and indicated that the conciliation agreement did not state that the exam was voluntary and that the agreement actually required that a new policy be posted within 60 days after the agreement was finalized. McEnery wrote that when he took the physical, no new policy had been distributed as required by the policy and that the only policy he saw was the policy on the wellness center site stating the exam was mandatory.

18. On February 21, 2023, McEnery emailed Tudyk asking for a copy of the document notifying him that the exam was voluntary that she had mentioned in her February 1, 2023, email. McEnery stated that he would file with EEOC and make an internal complaint if he did not receive that. Tudyk responded by email on February 27, 2023, and told McEnery she would respond when she had additional information.

19. On February 28, 2023, Tudyk emailed McEnery and told him that the February 20, 2023 daily message McEnery had sent her stated that participation in the Wellness Program was voluntary.

20. On or about March 15, 2023, then Fire Chief Hood issued a memorandum indicating that the SAFD Wellness Program would change names to the SAFD Medical Assessment Program. As a result of the change, some medical tests would be strictly mandatory, while other medical tests were supposed to be voluntary. The four mandatory exams were (1) a physical examination; (2) a vision test; (3) an audiogram; (4) spirometry tests; and (5) a stress electrocardiogram.

21. On or about March 17, 2023, McEnery corresponded with Defendant to get clarification on what the physical examination would consist of. McEnery wanted to confirm that the portions of the prior exam system that were found to be in violation of the ADA and GINA would not be part of the exam.

22. On March 26, 2023, McEnery was ordered to submit to a drug test.

23. When McEnery did not receive a response from SAFD, he filed an EEOC Charge of Discrimination on April 10, 2023. In the charge, he complained about age, disability, and genetic information discrimination, as well as retaliation.

24. On or about April 15, 2023, McEnery emailed Tudyk an AD 4.67 Complaint. McEnery's email states that he suffered retaliation and was harassed on March 26, 2023. On that day, a specimen collection technician arrived to administer

6

a random drug test on McEnery. McEnery had his supervisor sign off as a witness on the drug testing order.

25. Although the order was given to McEnery on March 26, 2023, it was dated December 7, 2022. McEnery told the technician and his supervisor that the drug test policy allowed for a firefighter to go to their own doctor to have a separate test taken as long as that test was done within four hours. McEnery asked how he was supposed to do that when the technician came to collect the sample at 5:40 pm on a Sunday. It was effectively impossible for McEnery to exercise his rights under the program.

26. On October 18, 2023, McEnery underwent a medical exam. He was subjected to the same improper Genitourinary/prostate exams.

27. On or about August 28, 2024, the EEOC sent correspondence to SAFD finding that the policy changes set forth in the September 29, 2022 conciliation agreement were not put into place until March 2023. The letter goes on to state that the revised medical assessment form developed June 2023 still had the improper genitourinary exam as a required element. The letter indicated that SAFD altered the form in December 2023, after getting a complaint from Brian McEnery. McEnery had complained about getting the genitourinary exam.

28. The letter concludes by stating "As Respondent (SAFD) is aware, the genitourinary exam was specifically cited in two previous EEOC Determinations as

a test which evidence did not support was job-related and consistent with business necessity. Overly broad and speculative tests which are not narrowly tailored to a specific job-related concern violate the ADA.

> "The evidence shows that the Respondent violated the conciliation agreement by not revising and disseminating a new testing policy to employees within 60 days of the finalized agreement. The evidence further shows the Respondent did not abide by informing the Commission within 20 days of any such dissemination of a new testing policy. The Evidence shows the Respondent implemented and disseminated a revised exam policy in March 2023, or approximately six months after the finalized agreement was signed in September 2022. Also, the Respondent revised its SAFD Medical Surveillance Program form in December 2023 without notifying the Commission of such revision, in violation of the Conciliation terms. Although the Respondent states it was general knowledge, there is no evidence to support that the Respondent notified all employees that the previous testing was suspended. As such, there is also evidence to support that the Respondent continued to allow for intrusive health testing during those six months by allowing such medical forms to be available on its online intranet system. Evidence also supports that Respondent did not conduct training or post the EEOC Posting on time as indicated in the timelines within the Conciliation terms. Therefore, I am making the recommendation to my Field Director that there is reasonable cause to believe that the Respondent violated the ADA in continuing to allow for intrusive health testing after being issued a previous violation finding and entering a conciliation agreement.

29.   Since filing his 2011, 2015, and 2023 EEOC charges, McEnery has not received a promotion to the position of Assistant Chief, despite being qualified and applying on multiple occasions. Other substantially less qualified individuals have been selected over McEnery for the position as recently as January 3, 2025.

30. Prior to his April 2023 EEOC charge, McEnery has been tasked with working as an Acting Assistant Chief 20-25 times. As an acting Assistant Chief, McEnery would receive additional pay.

31. However, since filing his charge in April 2023, McEnery has not received work as an Acting Assistant Chief and has not received the additional pay or opportunity to show his qualifications for the permanent position.

32. Since making each of his complaints, including the 2023 complaints, McEnery has suffered retaliation and has been treated like an outsider by upper management. He has been subjected to less favorable treatment than his co-workers following his complaints.

## V.
## CAUSES OF ACTION

### COUNT 1 - DISCRIMINATION BASED ON PERCEPTION OF DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE TEXAS LABOR CODE

33. The evidence will show that:

   (1) Plaintiff was regarded as disabled by Defendant and asked to submit to non-job related medical exams including invasive genitourinary exams.

   (2) Plaintiff suffered an adverse employment action; (Plaintiff was subjected to less favorable terms and conditions of employment and subjected to the exams) and

   (3) The circumstances arising raise an inference of disability discrimination.

## COUNT 2 – TITLE 1 OF THE AMERICANS WITH DISABILITIES ACT

34. Title I of the ADA prohibits medical examinations and inquiries of incumbent employees except in limited, prescribed circumstances. Specifically, an employer shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or the nature of the disability, unless such examination or inquiry is job-related and consistent with business necessity. 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.14(c).

35. The above described medical examinations and inquiries of fire fighters were not job-related or consistent with business necessity and therefore violated the ADA. 42 U.S.C. § 12112(d)(4)(A); 29 C.F.R. § 1630.14(c).

36. Plaintiff is an aggrieved individual under the ADA because he has been injured by Defendant's actions described above.

37. SAFD's conduct constituted a pattern or practice of requiring unlawful medical examinations and making unlawful health-related inquiries in violation of the ADA. See 42 U.S.C. § 12112(d) and 12117(a), which incorporates by reference Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-6; 29 C.F.R. § 1630.13(a).

## COUNT 3 - RETALIATION FOR BRINGING COMPLAINTS OF DISABILITY DISCRIMINATION AND AGE DISCRIMINATION IN

## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, THE AGE DISCRIMINATION IN EMPLOYMENT ACT AND THE TEXAS LABOR CODE

38. The evidence will demonstrate that prior to her termination:

    (1) Plaintiff engaged in protected activity when he made complaints of disability discrimination and age and informed Defendant that he was going to the EEOC.

    (2) Plaintiff was subject to an adverse employment action when he was subjected to less favorable terms and conditions of employment by Defendant after bringing these complaints.

    (3) The protected activity caused the adverse actions.

## COUNT 4 – RETALIATION UNDER THE GENETIC INFORMATION NON-DISCRIMINATION ACT

39. The evidence will demonstrate that prior to her termination:

    (1) Plaintiff engaged in protected activity when he made complaints of discrimination in violation of GINA and informed Defendant that he was going to the EEOC.

    (2) Plaintiff was subject to an adverse employment action when he was subjected to less favorable terms and conditions of employment by Defendant after bringing these complaints.

    (3) The protected activity caused the termination.

## VI.
## RESPONDEAT SUPERIOR

40. Employees involved in the discrimination described herein were at all times employees, agents, or representatives of the Defendant and were at all times

acting in the course and scope of that employment. Accordingly, Defendant is liable for such conduct under the doctrine of Respondeat Superior.

## VII.
## DAMAGES

41. Plaintiff alleges that as a direct and proximate result of the conduct and/or omissions on the part of the Defendant, he is entitled to recover at least the following legal damages:

> (1) Lost wages, past and future;
>
> (2) Compensatory Damages, including harm to professional reputation inconvenience, and mental anguish suffered in the past, and which, in all reasonable probability, will be suffered in the future.;
>
> (3) Injunctive and/or equitable relief to which he would be entitled;
>
> (4) Liquidated damages; and
>
> (5) Reasonable attorney fees, expert fees and costs.

## VIII.
## ADMINISTRATIVE FILINGS

42. Plaintiff filed his original verified complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission Civil Rights Division dually alleging that the Defendant had committed and unlawful employment action against Plaintiff.

43. Thereafter, Plaintiff received a Right to Sue Letter on his charge from the EEOC, giving Plaintiff notice of his right to sue Defendant within 90 days of its

receipt. Plaintiff received the Notice on October 24, 2024 and timely files this suit.

## IX.
## ATTORNEY FEES

44. Defendant's conduct as described in this petition and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining counsel. Therefore, Plaintiff seeks all reasonable and necessary attorney fees in this case which would include at least the following:

(1) Preparation and trial of the claim, in an amount the jury deems reasonable;

(2) Post-trial, pre-appeal legal services, in an amount the jury deems reasonable;

(3) An appeal to the Court of Appeals, in an amount the jury deems reasonable;

(4) Making or responding to an Application for Writ of Error to the Supreme Court, and attorneys' fees if application for Writ of Error is granted, in an amount the jury deems reasonable; and,

(5) Post-judgment discovery and collection in the event execution on the judgment is necessary, in an amount the jury deems reasonable.

## X.
## JURY DEMAND

45. Plaintiff further demands a trial by jury. A jury fee has been tendered.

## PRAYER FOR RELIEF

WHEREFORE, **BRAIN MCENERY** requests Defendant be cited to appear and

answer, and that on final trial, Plaintiff have judgment against Defendant as follows:

(1) judgment against Defendant for McEnery's actual damages, including lost wages and benefits (both front and back pay and/or equitable relief to include reinstatement, if feasible);

(2) judgment against Defendant for compensatory damages in the maximum amount allowed by law;

(3) equitable and/or injunctive relief to which he would be entitled;

(4) pre-judgment and post-judgment interest at the maximum allowed by law;

(5) costs of suit, including attorneys' fees; and

(6) Such other and further relief, both at law and in equity, to which McEnery may be justly entitled.

**Respectfully Submitted,**

**PONCIO LAW OFFICES**
**A Professional Corporation**
5410 Fredericksburg Road,
Suite 109
San Antonio, Texas 78229-3550
Telephone: (210) 212-7979
Facsimile: (210) 212-5880


BY: */s/ Alan Braun*
    ADAM PONCIO
    STATE BAR NO. 16109800
    aponcio@ponciolaw.com
    ALAN BRAUN
    STATE BAR NO. 24054488
    abraun@ponciolaw.com

    **PLAINTIFF'S ATTORNEYS**